IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CANDICE RAE STINSON,

    Plaintiff,
vs.                                            CASE NO. 1:17-cv-232-MW-GRJ

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Acting Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Supplemental Security Income pursuant to the Social Security Act. ECF No. 1. The Commissioner has answered, and both parties have filed briefs outlining their respective positions. ECF Nos. 13, 20, 21. For the reasons discussed below, it is recommended that the Commissioner's decision be affirmed.

### I. PROCEDURAL HISTORY

Plaintiff's June 2013 application alleged that she was disabled due to anxiety, depression, diabetes and diabetic nerve pain, migraines, and muscle spasms. R. 204. Her application was denied initially and upon reconsideration. R. 47-60, 108. Following a hearing, an administrative law

judge ("ALJ") issued an unfavorable decision, finding that Plaintiff was capable of performing work at a less-than-light level of exertion. R. 18-35. The Appeals Council denied review. R. 9-11. Plaintiff then filed the instant appeal. ECF No. 1. Plaintiff raises one issue for appeal, arguing that the ALJ "failed in his duty to assess" her credibility. ECF No. 20 at 22.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2012). Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole,

taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen,* 793 F.2d 1177 (11th Cir. 1986) (finding that the court must also consider evidence detracting from evidence on which the Commissioner relied). However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1) (2012); 20 C.F.R. § 404.1505 (2015).[1] The impairment must be severe, making Plaintiff unable to do her previous

---

[1] All further references to 20 C.F.R. will be to the 2015 version, unless otherwise specified.

work, or any other substantial gainful activity which exists in the national economy. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. § 404.1520. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is working at a substantial gainful activity, he is not disabled. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. §§ 404.1520(e)–(f). Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. § 404.1520(g).

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The burden then temporarily shifts to the Commissioner to

demonstrate that "other work" which the claimant can perform currently exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2.[2]

### III.  SUMMARY OF THE RECORD

#### A.  *ALJ's Decision*

The ALJ determined that Plaintiff has the severe impairments of morbid obesity, diabetes mellitus with neuropathy, hypertension, asthma, disorders of the knee, migraine headaches, affective disorder, anxiety, and panic disorder.  R. 21.  The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or equals the listings. R. 21.  The ALJ found that Plaintiff has the RFC to perform less than light work, with additional exertional, postural, environmental, and mental/social limitations, including a limitation to simple, routine tasks; avoiding fast-paced production and quota requirements; only occasional, brief, superficial contact with others; and with no abrupt changes in the work.  R. 23.  After reviewing the medical records and opinion evidence, the ALJ

---

[2] In *Doughty* the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.
>
> *Id.* (internal citations omitted).

concluded that Plaintiff's subjective complaints regarding the limiting nature of her symptoms were not consistent with the record. R. 24-33.

Based upon the testimony of a VE, the ALJ determined that Plaintiff was unable to perform any of her past relevant work as a preschool teacher, teacher's aide, cashier/checker, and receptionist. In light of Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as Route Clerk, Blade Balancer, and Egg Candler. The ALJ therefore found that Plaintiff was not disabled. R. 33-34.

### B. *Medical and Opinion Evidence*

Plaintiff's appeal appears to focus on the asserted limiting effects of her mental health symptoms, in the context of the ALJ's assessment of her subjective complaints. *See* ECF No. 20 at 17-21 (Plaintiff's brief in opposition to Commissioner's decision, quoting Plaintiff's hearing testimony about her mental health symptoms). The only other impairment mentioned in Plaintiff's argument is a reference in *one* sentence to "intractable neuropathic pain." ECF No. 20 at 23-24. However, that sentence refers to "pain testimony, such as Plaintiff DOBROWSKI's, supported by medical evidence of a condition or conditions, such as Plaintiff's [sic] DOBROWSKI's intractable neuropathic pain[.]" *Id.* (capitalization in original). Because this sentence refers to a different Social Security

claimant, and there is no other discussion in the brief about Plaintiff's diabetic neuropathy, the Court does not construe Plaintiff's appeal as arguing that the ALJ erred with respect to his assessment of her neuropathic pain.  The Court therefore will not extensively discuss the records of this impairment except to the extent they are relevant to the ALJ's assessment of Plaintiff's subjective complaints, which Plaintiff has identified as her sole issue for appeal.  *See* ECF No. 20.

At an August 2010 consultative examination with William Beaty, Ph.D., Plaintiff presented with a depressed and anxious mood, constricted and flat affect, and intact cognition and memory with no delusions or paranoia.  Plaintiff described being able to care for her daughter, perform household chores, and shop for groceries, though she felt anxious in public.  Dr. Beaty assessed Plaintiff's GAF as 55, constituting moderate symptoms or moderate difficulty in social and occupational functioning.  R. 316-19.

In September 2010, DDS consulting physician Dr. Angeles Alvarez-Mullin performed a mental RFC assessment and opined that Plaintiff is capable of carrying out simple instructions as well as instructions of low complexity.  Dr. Alvarez-Mullin concluded that Plaintiff is able to work in cooperation with others, and her interpersonal skills are adequate for low demand.   R. 334-37.

In April 2011, Plaintiff reported symptoms of anxiety and depression to Dr. Philippa Bright. On examination, Plaintiff had a normal mood and affect. Dr. Bright adjusted Plaintiff's dosage of Zoloft. In November 2011, Plaintiff reported worsening depression due to social stressors. On examination, she was occasionally tearful with normal thought and insight. Dr. Bright prescribed Prozac. In June 2012, Plaintiff described worsening mood and anxiety. Dr. Bright increased Plaintiff's dosage of Prozac and also prescribed Xanax. R. 414-91; 492-564.

In May 2013, Plaintiff related that she had taken Prozac for 10 years and that her symptoms were generally well-controlled. Later that month, Plaintiff presented to Dr. Mitul Jones with complaints of anxiety attacks and requested a work note. According to Dr. Jones' observations, Plaintiff began the interview using normal speech but then began to speak more slowly and stammer. Dr. Jones increased Plaintiff's Prozac and also recommended that Plaintiff begin counseling. R. 414-91.

In June 2013, Plaintiff informed Dr. Bright that her depression and anxiety were worsening. At that time, she was taking Effexor. Plaintiff reported tremors, panic attacks, issues with memory, and word-finding difficulty. Dr. Bright encouraged Plaintiff to follow-up for counseling and provided Plaintiff with a letter stating that she was undergoing "medical evaluation" including "imaging and specialty referral" and was unable to

return to work.  The letter did not provide specific reasons or medical conditions as to why Plaintiff was unable to return to work.  R. 346-408; 414-91.

In July 2013, Plaintiff presented to Meridian Behavioral Healthcare for a psychiatric evaluation.  Dr. Sanford Kaufman diagnosed panic disorder with agoraphobia and prescribed Klonopin.  At her August 2013 follow-up and examination, Dr. Kaufman noted that Plaintiff had a normal mood and affect, and her behavior was normal.  He advised Plaintiff to begin counseling.  Later in August, Plaintiff related that her medication helps at times, but she still feels "up and down".  R. 565-77.

Plaintiff continued treating with Dr. Kaufman.  In October 2013, Plaintiff reported that she could not be around too many people and that she thought her medications were not working.  Dr. Kaufman increased her Klonopin.  R. 565-77.  Around the same time, Plaintiff reported to Dr. Bright that her depression and anxiety were improved with an increased dose of Effexor.  A few weeks later, Plaintiff returned to Dr. Bright with complaints of a racing heart and shortness of breath.  Plaintiff reported that she had been out of Klonopin for 8-9 days.  Dr. Bright noted that Plaintiff's symptoms were likely related to Klonopin withdrawal.  R. 578-96.

DDS consultant Jessica Anderton, Psy.D., reviewed Plaintiff's records in October 2013 and observed that the objective medical evidence largely

reflected benign or normal findings. Dr. Anderton opined that Plaintiff is capable of performing routine occupational tasks in settings with modest social demands and which are not fast-paced or quota-driven. R. 47-60.

Plaintiff was voluntarily admitted to Shands Vista in November 2013, endorsing symptoms of depression, mania, and anxiety.[1] She was diagnosed with bipolar disorder and responded well to a mood stabilizer. Plaintiff began attending groups and interacting with others. She was discharged after seven days. R. 612-25. Plaintiff followed up with Dr. Kaufman, who assessed her mood as euthymic and affect within normal limits. Plaintiff reported that her medications were helping, and Dr. Kaufman indicated that her symptoms had improved. R. 597-611.

At a March 2014 visit with Dr. Kaufman, Plaintiff reported fluctuating moods. Examination revealed a mildly depressed and anxious mood, affect was within normal limits, and memory was intact. Dr. Kaufman assessed Plaintiff's GAF as 62, indicating some mild symptoms or some difficulty in social functioning. Plaintiff's mental status and GAF remained consistent over the next several months. Dr. Kaufman made medication adjustments to address Plaintiff's reports of nervousness. R. 677-726.

---

[1] Plaintiff testified at the hearing that she was admitted pursuant to the Baker Act, but the medical records reflect that the was admitted voluntarily. R. 612, 765.

At a December 2014 visit, Plaintiff reported hearing voices and seeing shadows, but she also had run out of medication. Her mood was moderately depressed, and behavior was cooperative and within normal limits. Dr. Kaufman restarted her medications. Additional medication adjustments were made at a follow-up in February 2015. In April 2015, Plaintiff's mental status examination revealed symptoms of moderate depression, mild anxiety, and mild anger. Her memory was grossly intact, and behavior was not clinically significant. R. 677-726.

In June 2015, Plaintiff voluntarily presented to the crisis stabilization unit due to reported difficulty controlling her moods and behaviors. She reported excessive anxiety and worry. She was assessed as cooperative with normal speech, normal thought process and content, and as having symptoms of mild depression and mild anxiety. Plaintiff did not present as posing a risk to herself or others. Plaintiff returned to outpatient treatment. R. 677-81.

Plaintiff continued treatment at Meridian, with symptoms of moderate depression treated with Lithium. Plaintiff denied side effects from her medications at a November 2015 visit. In January 2016, Prozac was added to Plaintiff's medications due to her complaints of increased depression. In February 2016, Plaintiff stated she was getting more down and isolated, but denied medication problems. Her mood was moderately

irritable, affect was flat, she was cooperative, and her behavior was not clinically significant. R. 677-726.

With regard to her diabetic neuropathy – the only physical impairment mentioned in Plaintiff's argument in this appeal – that diagnosis was made by Dr. Bright in February 2011. However, at that time Plaintiff's vibration test was negative for neuropathy and the record does not reflect that Plaintiff underwent any electrodiagnostic testing for neuropathy. R. 492-564. In March 2013, Plaintiff denied numbness and tingling in her feet and reported that she was very active at work. R. 346-408. In February 2015, Plaintiff described tingling and burning in her feet. Her gait was antalgic, but strength and tone were normal throughout. R. 727-50.

### C. *Hearing Testimony*

Plaintiff was 44 years old at the time of the March 2016 hearing. hearing. She testified that her anxiety and bipolar medications work "sometimes". Plaintiff stated that she has a hard time being around people and is more comfortable at home alone. She stopped attending church in 2013. Plaintiff goes grocery shopping because it is something she has to do, but she has panic attacks. Plaintiff testified that she had a "nervous breakdown" in November 2013, when she was admitted to Shands Vista. She described herself as having a very short temper. She testified that her mental issues are more of a problem in the workplace than her physical

problems.  Plaintiff is able to dress and bathe herself, though she is stiff in the morning due to arthritis.  Plaintiff can prepare meals and do dishes and laundry, though she needs help lifting a laundry basket due to back pain.  Plaintiff is able to dust, sweep, mop, and vacuum as long as she goes slowly and takes breaks.  Plaintiff is able to drive short distances.  She stated that her medications cause fatigue and drowsiness.  She has difficulty concentrating and can no longer do activities such as crochet.  She relates very poorly to people due to her irritability.  R. 758-82.

The ALJ posed a hypothetical to the VE that assumed an individual of the same age and education as Plaintiff with the RFC for less-than-light work with additional limitations.  The mental restrictions included a limitation to simple, routine tasks, with no fast-paced production or quota-type requirements, and only occasional, brief, superficial interaction with the public, supervisors, and co-workers, and no abrupt changes in the work.  R. 784.  The VE identified jobs that such a person could perform, including Route Clerk, Blade Balancer, and Egg Candler.   R. 785.

## IV.  DISCUSSION

### *ALJ's Evaluation of Subjective Complaints*

As the sole issue for appeal, Plaintiff conclusionally asserts that the ALJ "failed in his duty to assess Plaintiff's credibility" prior to determining her RFC.  ECF No. 20 at 7, 22.  Plaintiff's assertion is unsupported in the

record, which reflects that the ALJ specifically discussed Plaintiff's subjective complaints, evaluated the medical evidence, and concluded that Plaintiff's statements regarding the limiting nature of her symptoms were not consistent with the record.  *See* R. 24, 28-29, 32.

To establish disability on the basis of subjective complaints, Plaintiff must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of the alleged symptoms or that the medical condition could be reasonably expected to give rise to the alleged symptoms. *See* 20 C.F.R. § 404.1520(c); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("Dyer failed to set forth the requisite objective medical evidence that confirmed the severity of the alleged pain . . . or that the objectively determined medical conditions are of such a severity that they can be reasonably expected to give rise to the alleged pain."); *Wilson*, 284 F.3d at 1225-26; *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991).  In analyzing the evidence, the focus is on how an impairment affects Plaintiff's ability to work, and not on the impairment itself. *See* 20 C.F.R. § 404.1521; *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (severity of impairments must be measured in terms of their effect on the ability to work, not from purely medical standards of bodily perfection or normality).

The ALJ assessed Plaintiff's subjective complaints consistent with the framework established under Social Security Regulation ("SSR") 16-3p. *See* R. 24. As the Eleventh Circuit has explained:

> SSR 16-3p rescinded a previous Social Security ruling that concerned the credibility of a claimant. SSR 16-3p, 82 Fed. Reg. 49,462, 49,463 (Oct. 25, 2017). SSR 16-3p removed the use of the term "credibility" from its sub-regulatory policy because the Social Security Administration's (SSA) regulations did not use the term. *Id.* SSR 16-3p clarified that "subjective symptom evaluation is not an examination of an individual's character" and that a two-step evaluation process must be used. *Id.* Step one is to determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *Id.* at 49,463-64. Step two is to evaluate the intensity and persistence of an individual's symptoms, such as pain, and determine the extent to which an individual's symptoms limit her ability to perform work-related activities. *Id.* at 49,464-66. The Commission stated:
>
>> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult . . . with a title XVI disability claim.

*Id.* at 49,463. *Contreras-Zambrano v. Social Sec. Adm.*, 724 Fed.Appx. 700, 702-03 (11th Cir. 2018).[2]

---

[2] In October 2017, the SSA republished SSR 16-3p, clarifying that it was applicable beginning on March 28, 2016. *Id.* at 49,462, 49,468. The republished version noted that the SSA's adjudicators would apply SSR 16-3p to all determinations made on or after March 28, 2016, and that the SSA expected federal courts to use the version of the rule that was in

In this case, with respect to Plaintiff's mental impairments, the ALJ found that Plaintiff's testimony regarding her mental inability to work was not consistent with the medical evidence which, as summarized above, showed largely conservative treatment since 2010. R. 28. The ALJ arrived at this conclusion following a thorough review of the record evidence of Plaintiff's mental health treatment. The ALJ acknowledged Plaintiff's inpatient treatment in November 2013 but noted that Plaintiff had admitted overusing benzodiazepines at that time. Plaintiff's symptoms stabilized with treatment during her seven-day admission, and she participated in group therapy while admitted. The ALJ observed that despite the numerous recommendations in the medical records for Plaintiff to attend counseling to improve her coping skills, Plaintiff did not attend counseling, suggesting her mental limitations were not as severe as alleged. The ALJ afforded "great weight" to the opinion of treating psychiatrist Dr. Kaufman, who consistently assessed Plaintiff's GAF as 62, reflecting only mild limitations in social and occupational functioning. Plaintiff reported engaging in various concentrative-intensive tasks such as caring for her

---

effect at the time the SSA issued the decision under review. *Id.* at 49,468 n.27. The republished version further noted that the regulations regarding the evaluation of symptoms were unchanged. The decision under review in this case was made on July 20, 2016, and therefore SSR 16-3p is applicable. *See Contreras-Zambrano*, 724 Fed.Appx. at 702-03.

daughter, preparing meals, and performing household chores. Further, the ALJ observed that Plaintiff's testimony regarding fatigue and drowsiness due to medication was not corroborated in the medical records, which show that she denied medication side effects in January and February 2016. *Id.* at 28-29. The ALJ nevertheless accounted for Plaintiff's mental impairments by including limitations in the RFC for her deficits in concentration, persistence, and pace, and her social difficulties.

With respect to Plaintiff's allegation of disability due to diabetic neuropathy, the ALJ noted that vibration testing was negative for neuropathy, that the neuropathy diagnosis was not confirmed with electrodiagnostic testing, and physical examinations showed that Plaintiff's strength was normal and her gait was largely intact. As further support, the ALJ pointed to records showing that Plaintiff had been noncompliant with her diabetic diet and medication, suggesting that her symptoms of neuropathy "were not as bothersome or limiting as alleged." R. 32. The ALJ nevertheless accounted for Plaintiff's pain complaints by including appropriate exertional and postural limitations in her RFC. *Id.*

On this record, Plaintiff's argument that the ALJ "failed" in his duty to assess her subjective complaints before formulating the RFC must be rejected. The record supports a conclusion that the ALJ properly evaluated Plaintiff's subjective complaints and that the ALJ's determination of

Plaintiff's RFC (which Plaintiff does not directly contest) is supported by substantial evidence.

## RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida, this 25th day of February 2019.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.